# EXHIBIT A

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| LNV CORPORATION<br>7195 DALLAS PARKWAY<br>PLANO, TX 75024<br><br>       Plaintiff,<br><br>  vs.<br><br>FRANKIE T. LAWRENCE<br>WILLIAM H. LAWRENCE, III<br>6629 31st STREET, NW<br>WASHINGTON, DC 20015<br><br>and<br><br>UNITED STATES OF AMERICA<br><br>Serve:  U.S. ATTORNEY'S OFFICE<br>        DISTRICT OF COLUMBIA<br>        CIVIL PROCESS CLERK<br>        555 4th STREET, NW<br>        WASHINGTON, DC 20530<br><br>        ERIC H. HOLDER, JR.<br>        U.S. ATTORNEY GENERAL<br>        U.S. DEPARTMENT OF JUSTICE<br>        950 PENNSYLVANIA AVE., NW<br>        WASHINGTON, DC 20530<br><br>       Defendants. | Case No. 2014 CA 002259 R(RP)<br>Judge Judith Bartnoff |

## AMENDED COMPLAINT FOR JUDICIAL FORECLOSURE
### (Action Involving Real Property)

LNV Corporation, by and through counsel, Azer Akhtar, Esq. and Rosenberg & Associates, LLC, files this Amended Complaint for Judicial Foreclosure as to the improved real

property commonly known as 6629 31st Street, NW, Washington, DC 20015 and respectfully

represents unto this Honorable Court as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff LNV Corporation ("Plaintiff") is the holder of that certain note executed

by Defendants William H. Lawrence, III and Frankie T. Lawrence (collectively, the

"Lawrences") in the original principal amount of $800,000.00 dated August 10, 2006 (the

"Note") and Deed of Trust recorded amongst the Land Records of the District of Columbia on

August 22, 2006 as Instrument No. 2006114233 (the "DOT") and secured by the improved real

property commonly known as 6629 31st Street, NW, Washington, DC 20015 (the "Property")

and more particularly described as:

> LOT NUMBERED 59 IN SQUARE NUMBERED 2344 IN THE
> SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART
> OF AA TRACT OF LAND KNOWN AS "THE MATTHEWS
> TRACT" AS PER PLAT RECORDED IN THE OFFICE OF THE
> SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72
> AT FOLIO 12.
>
> AND
>
> PART OF ABERFOYLE PLAT W. CLOSED AND SHOWN ON
> PLAT RECORDED IN LIBER 169, FOLIO 68 OF THE RECORDS
> OF THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF
> COLUMBIA, DESCRIBED AS FOLLOWS, BEGINNING FOR THE
> SAME AT A POINT ON THE SOUTHERLY RIGHT OF WAY
> LINE OF 31st STREET, N.W., SAID POINT BEING ALSO THE
> NORTHERLY CORNER OF LOT 59, IN SQUARE 2344 IN THE
> SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART
> OF A TRACT OF LAND KNOWN AS "THE MATTHEWS
> TRACT", AS PER PLAT RECORDED IN THE OFFICE OF THE
> SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72
> AT FOLIO 12 AND RUNNING THENCE ALONG SAID
> SOUTHERLY RIGHT OF WAY LINE NORTH 44 DEGREES, 58
> MINUTES, 30 SECONDS EAST, 20.01 FEET TO A POINT;
> THENCE SOUTH 66 DEGREES, 07 MINUTES, 38 SECONDS
> EAST 37.75 FEET TO A POINT; THENCE SOUTH 28 DEGREES,
> 40 MINUTES, 44 SECONDS EAST, 26.04 FEET TO A POINT;

THENCE SOUTH 44 DEGREES 58 MINUTES, 30 SECONDS WEST 11.90 FEET TO A POINT; THENCE SOUTH 39 DEGREES, 40 MINUTES, 43 SECONDS EAST, 41.24 FEET TO A POINT; THENCE ALONG THE REAR LINE OF SAID LOT 59 EXTENDED. SOUTH, 44 DEGREES, 58 MINUTES, 30 SECONDS WEST 20.01 FEET TO A POINT; SAID POINT BEING ALSO THE EASTERLY POINT OF SAID LOT 59; AND THENCE ALONG THE NORTHEASTERLY LINEOF SAID LOT 59 AND RUNNING WITH AN ARC OF A CURVE TO THE LEFT, THE RADIUS OF WHICH IS 1263.11 FEET, 145.71 FEET TO THE PLACE OF BEGINNING.

NOTE: AT THE DATE HEREOF, THE ABOVE DESCRIBED LAND IS DESIGNATED ON THE RECORDS OF THE ASSESSOR FOR THE DISTRICT DF COLUMBIA FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 810 SQUARE 2344.

2.     Upon information and belief, the Lawrences are adult residents of the District of Columbia, the current record owners of the Property, and the grantors under the DOT.

3.     The Internal Revenue Service filed federal tax liens that attach to the Property in the Land Records of the District of Columbia as Instrument Nos. 2007059749, 2007059963, 2008040720, 2009007354, 2009017586, 2009068759, 2009068760, 2009068761, 2011009266, 2011123675, 2011123676, 2012066076, 2012095148, and 2013048343 (collectively, the "Tax Liens"). However, Defendant United States of America (the "USA") is the real party in interest that holds the tax liens against the Lawrences that affect the Property and is named as a defendant in this lawsuit pursuant to 26 U.S.C. §7425(a).

4.     The Property is located in the District of Columbia.

5.     Venue is proper in the Superior Court of the District of Columbia.

6.     Jurisdiction in this Court is proper pursuant to D.C. Code § 13-423.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

7.     On or about January 21, 2005, the Lawrences acquired a fee simple interest in the Property pursuant to that deed recorded amongst the Land Records of the District of Columbia

3

on February 9, 2005 as Instrument No. 2005019396 (the "Deed"). *See Deed attached hereto as Exhibit A.*

8.    On or about August 10, 2006, the Lawrences obtained a loan from Fremont Investment & Loan ("Fremont") in the amount of $800,000.00 and executed the Note evidencing the indebtedness (the "Note"). *See Note attached hereto as Exhibit B.*

9.    In connection with the Note, the Lawrences executed the DOT securing the Note by Property. The DOT listed Fremont as the lender and Mortgage Electronic Registrations Systems, Inc. ("MERS") as the beneficiary as a nominee for Fremont. *See DOT attached hereto as Exhibit C.*

10.    On August 22, 2006, Fremont recorded, or caused to be recorded, the DOT amongst the Land Records of the District of Columbia as Instrument No. 2006114233. *See Exhibit C.*

11.    On March 10, 2008, MERS executed an Assignment of Deed of Trust memorializing the transfer of the Note and DOT to Plaintiff (the "Assignment"). The Assignment was recorded amongst the Land Records of the District of Columbia as Instrument No. 2008088973. *See Assignment of Deed of Trust attached hereto as Exhibit D.*

12.    Plaintiff is the current holder of the Note and beneficiary under the DOT, with full rights to enforce the same.

13.    On or about February 1, 2012, the Lawrences defaulted under the terms of the Note and DOT by failing to remit payment.

14.    On April 5, 2012, MGC Mortgage, Inc., authorized loan servicer for Plaintiff ("MGC"), mailed, or caused to be a mailed, a Notice of Default requesting that the Lawrences cure their default. *See Notice of Default attached hereto as Exhibit E.*

4

15. The Lawrences failed to cure their default, and pursuant to the terms of the Note and DOT, Plaintiff accelerated the Note.

16. Pursuant to the terms of the Note and DOT, Plaintiff is entitled to recover all costs of collection, including reasonable attorney's fees.

17. The Lawrences' default is ongoing, and as of February 28, 2014, there remains a balance of $1,137,372.45 due and owing to Plaintiff.

18. On December 4, 2013, Plaintiff executed a Deed of Appointment of Substitute Trustees appointing Diane S. Rosenberg, Azer Akhtar, and Kenneth R. Savitz (collectively, the "Trustees") as Substitute Trustees, with authority to sell the Property and receive a commission, under the terms of the DOT and recorded the same amongst the Land Records of the District of Columbia as Instrument No.: 2014002669. *See Deed of Appointment of Substitute Trustees attached hereto as Exhibit F.*

19. The USA holds the Tax Liens against the Lawrences that affect the Property. *See Exhibit G, the Tax Liens.*

**COUNT I**
**(Judicial Foreclosure)**

20. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 17 as if stated herein and alleges further:

21. On August 10, 2006, the Lawrences executed the Note and DOT securing the underlying loan against the Property. *See Exhibits B & C.*

22. On or about February 1, 2012, the Lawrences defaulted under the terms of the Note and DOT.

23. On April 5, 2012, MGC requested the Lawrences to cure the default. *See Exhibit E.*

5

24.     The Lawrences failed to cure the default, and as of February 28, 2014, $1,137,372.45 is due and owing.

25.     Pursuant to D.C. Code § 42-816, this Court has authority to order and decree that the Subject Property be sold.

26.     Plaintiff already appointed the Trustees with authority to sell the Property; the Trustees have expertise, knowledge and familiarity with this matter and the procedures regarding foreclosure of a deed of trust; and the Trustees should be authorized to advertise sale of the Property, provide notice of the proposed sale, and report results of the sale to this Court.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and order:

A.     That the Lawrences be deemed to be in default under the terms of the Note and DOT; and

B.     That the Trustees shall have the authority to sell the Property at public auction following mailed notice of the time, place, manner, deposit and terms of sale to all interested parties and publication once a week for a period of four (4) weeks in a daily newspaper of general circulation in the District of Columbia; and

C.     That the Trustees shall have authority to enter into a contract for sale of the Property with the highest bidder, convey the Property to the highest bidder, and file a Verified Report of Sale with this Court within thirty (30) days of the public auction; and

D.     That Plaintiff be awarded its costs of collection, including attorney's fees and costs; and

E.     That the Trustees shall be entitled to an appropriate commission, in accordance with the terms of the DOT; and

F.     That Plaintiff shall have the right to obtain a deficiency judgment for any amounts remaining due and owing under the Note following completion of this action; and

G.     Granting Plaintiff such other and further relief as is deemed appropriate.

## COUNT II
### (Breach of Contract)

27.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 24 as if stated herein and alleges further:

28.    On or about August 10, 2006, the Lawrences obtained a loan from Fremont in the amount of $800,000.00.

29.    To evidence the loan and establish the terms of repayment between the parties, the Lawrences executed the Note. *See Exhibit B.*

30.    Plaintiff is the current owner of the loan and holder of the Note.

31.    The Note represents a valid, binding and enforceable agreement between the parties.

32.    On or about February 1, 2012, the Lawrences defaulted by failing to remit payment in accordance with the terms of the Note.

33.    As a result of the Lawrences' default, Plaintiff has been damaged.

34.    As of February 28, 2014, $1,137,372.45 is due and owing Plaintiff.

35.    Interest and other charges continue to accrue under the terms of the Note.

36.    Under the terms of the Note, Plaintiff is entitled to recover all costs of collection, including reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor and order:

A.    That Plaintiff shall submit a verified accounting for all amounts due and owing under the Note; and

B.    That Plaintiff's counsel shall submit an affidavit for all costs, including reasonable attorney's fees; and

C.      That judgment be entered in favor of Plaintiff and against the Lawrences for all amounts due and owing under the Note; and

D.      Granting Plaintiff such other and further relief as is deemed appropriate.

Respectfully submitted,

ROSENBERG & ASSOCIATES, LLC

/s/ Azer Akhtar
Azer Akhtar, Esq. (D.C. Bar #987013)
ROSENBERG & ASSOCIATES, LLC
8601 Westwood Center Drive, Suite 255
Vienna, VA 22182
Telephone:    301.907.8000
Facsimile:     301.907.9101
Email:         aakhtar@rosenberg-assoc.com



1 of 2



**EXHIBIT**

A

Please Return to:
American Title & Escrow
1738 Elton Road Ste. 113
Silver Spring, MD 20903
File# 04-741A

**THIS DEED**

Made this 21st day of January, 2005, by and between, Frankie T. Lawrence, also known of record as Frankie L. Lawrence, party of the first part, Grantor, and Frankie T. Lawrence and William R. Lawrence, III, parties of the second part, Grantees;.

WITNESSETH, that in consideration of the sum of ($0), receipt of which is hereby acknowledged, and which party of the first part certifies under the penalties of perjury as the actual consideration paid, including the amount of any mortgage or deed of trust outstanding, the said Grantor does hereby grant, convey and assign unto the said Grantees, in FEE SIMPLE, as MARRIED, SOLE OWNER, all that lot of ground situate in the DISTRICT OF COLUMBIA, described as:

LOT NUMBERED 59 IN SQUARE NUMBERED 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF A A TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT" AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12.

AND

PART OF ABERFOYLE PLAT, W., CLOSED AND SHOWN ON PLAT RECORDED IN LIBER 169, FOLIO 68 OF THE RECORDS OF THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA, DESCRIBED AS FOLLOWS: BEGINNING FOR THE SAME AT A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF 31ST STREET, N.W., SAID POINT BEING ALSO THE NORTHERLY CORNER OF LOT 59, IN SQUARE 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF A TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT", AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12 AND RUNNING THENCE ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 44 DEGREES, 58 MINUTES, 30 SECONDS EAST, 20.01 FEET TO A POINT; THENCE SOUTH 66 DEGREES, 07 MINUTES, 38 SECONDS EAST 37.75 FEET TO A POINT; THENCE SOUTH 28 DEGREES, 40 MINUTES, 44 SECONDS EAST, 26.04 FEET TO A POINT; THENCE SOUTH 44 DEGREES 58 MINUTES, 30 SECONDS WEST 11.90 FEET TO A POINT; THENCE SOUTH 39 DEGREES, 40 MINUTES, 43 SECONDS EAST, 41.24 FEET TO A POINT; THENCE ALONG THE REAR LINE OF SAID LOT 59 EXTENDED, SOUTH, 44 DEGREES, 58 MINUTES, 30 SECONDS WEST 20.01 FEET TO A POINT, SAID POINT BEING ALSO THE EASTERLY POINT OF SAID LOT 59; AND THENCE ALONG THE NORTHEASTERLY LINE OF SAID LOT 59, AND RUNNING WITH AN ARC OF A CURVE TO THE LEFT, THE RADIUS OF WHICH IS 1263.11 FEET, 145.71 FEET TO THE PLACE OF BEGINNING.

NOTE: AT THE DATE HEREOF, THE ABOVE DESCRIBED LAND IS DESIGNATED ON THE RECORDS OF THE ASSESSOR FOR THE DISTRICT OF COLUMBIA FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 823, SQUARE 2358;

Being the same property conveyed to Record Owner(s) by deed recorded 7/13/01 as Inst. No. 62925 among the aforesaid Land Records.

Parcel I.D.:    SQUARE 2344, LOT 0059
Parcel I.D.:    SQUARE 2358, LOT 823.
Property Address: 6629 31ST STREET, N.W., WASHINGTON, D.C. 20015
Title Insurer:    First American Title Insurance Company



SUBJECT to covenants, easements, and restrictions of record.

TO HAVE AND TO HOLD the said lot of ground and premises, above described and mentioned, and hereby intended to be conveyed, together with the buildings and improvements thereupon erected, made or being, and all and every title, right, privilege, appurtenance and advantage thereunto belonging, or in anywise appertaining unto the proper use and benefit of said parties of the second part, his/her heirs, successors and assigns, in fee simple.

AND the said Grantor covenants to warrant specially the property hereby granted and conveyed and that the Grantor will execute such further assurances of said land as may be requisite or necessary.

Doc# 2005010395  Fees:$33.50
02/08/2005   10:48AM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

_____ (SEAL)
Frankie T. Lawrence

_____ (SEAL)

RECORDING        $    27.00
SURCHARGE        $     6.50

State of _____
County of _____ to wit:

I Hereby Certify, That on this 21st day of January, 2005, before me, the subscriber, did personally appear Frankie T. Lawrence, known to me or satisfactorily proven to be the person who executed the foregoing instrument bearing the 21st day of January, 2005, and who personally appeared before me in said jurisdiction and acknowledged the same to be his/her act and deed. Given under my hand and seal this 21st day of January, 2005.

_____
Notary Public

My Commission Expires:  _____

CASE #        04-741A

REMIT TO:        American Title & Escrow Company
                 1738 Elton Road, Suite 113
                 Silver Spring, Maryland  20903



INTEREST START DATE

**EXHIBIT**
B

# ADJUSTABLE RATE NOTE
(6-Month LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

August 10, 2006                         BREA                              CA    92821
        [Date]                          [City]                              [State]

                6629 31ST STREET NW, Washington, DC  20015

                           [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 800,000.00                    (this amount is called " Principal"), plus interest, to the order of the Lender. The Lender is  Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          8.850 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  October 01, 2006                    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  September 01, 2036                   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  2727 East Imperial Highway, Brea, CA  92821

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 6,078.67                    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index  - Single Family –Freddie Mac UNIFORM INSTRUMENT

-815N (0404)                    Form 5520-3704
     VMP Mortgage Solutions (800)521-7291
Page 1 of 4                      Initials



Original Note & Riders

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  September, 2008                         , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposit in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six  and  270/1000

                    percentage point(s) (                    6.270 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than      11.850      % or less than 8.850      %.    Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than      1.500      from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than      14.850      % or less than      8.850      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF ***

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 5520 3/04
Initials:



## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     6.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

```
** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
```

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WILLIAM H LAWRENCE, III                -Borrower

_____ (Seal)
FRANKIE T LAWRENCE                     -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

*[Sign Original Only]*





# PREPAYMENT RIDER TO NOTE

30000000296370

THIS PREPAYMENT RIDER is made this 10th day of August, 2006, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to:
Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:
    6629 31ST STREET NW, Washington, DC  20015

(Property Address)

## BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 5 of the Note

    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

    I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 2  Years ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time.


_____  8/10/06        _____  8-10-06
WILLIAM H LAWRENCE, III    Date               FRANKIE T LAWRENCE              Date

_____                 _____
                           Date                                              Date

_____                 _____
                           Date                                              Date

_____                 _____
                           Date                                              Date

MSPPY1 10/11/2005

# Balloon Payment Rider to Note
## (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this 10th day of August, 2006 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of Fremont Investment & Loan (the "Lender") and dated the same date as this Note Rider.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**1. Payments**
Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as follows:

> **"3.   PAYMENTS**
>
>   **(A) Time and Place of Payments**
>   I will pay principal and interest by making a payment every month.
>   I will make my monthly payment on the first day of each month beginning on 10/01/2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On September 01, 2036 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.
>
>   I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.
>
>   **(B) Amount of Monthly Payments**
>   Each of my initial monthly payments will be in the amount of U.S. $ 6,078.67 . This amount may change.
>
>   **(C) Monthly Payment Changes**
>   Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
  The interest rate I will pay may change on the first day of September, 2008 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

  **(B) The Index**
  Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."
  If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.



(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding 51x and .270/1000 percentage point(s) ( 6.270 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on 9/1/2046 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.850 % or less than 8.850 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 14.850 % and will never be less than 8.850 %.

(E) **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) **Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

2. **Uniform Secured Note**

Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

"11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) **UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) **AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

BALARMN2 9/1/2005

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. "

**3. Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

|                                    |                       |
|------------------------------------|-----------------------|
| WILLIAM H LAWRENCE, III            | (Seal)<br>- Borrower  |
| FRANKIE T LAWRENCE                 | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |
|                                    | (Seal)<br>- Borrower  |

[Sign Original Only]

BALARMN3  9/1/2005

Pay to the order of   RESIDENTIAL FUNDING COMPANY, LLC
                      without recourse.

Fremont Investment & Loan
       Doug Pollock
Assistant Vice President

Laurence,
William III
1710266I
619116



Return To:

Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA 92834-34078

30000000296370

——————————————[Space Above This Line For Recording Data]——————————————

# DEED OF TRUST

MIN 1001944-3000296370-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated August 10, 2006
together with all Riders to this document.

**(B) "Borrower"** is FRANKIE T LAWRENCE and WILLIAM H LAWRENCE, III

Borrower's address is 6629 31ST STREET NW  Washington, DC  20015
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Fremont Investment & Loan

Lender is a     CORPORATION
organized and existing under the laws of   CALIFORNIA
Lender's address is 2727 East Imperial Highway, Brea, CA  92821

**(D) "Trustee"** is First American Title Insurance Company

Trustee's address is 4933 AUBURN AVE
                Bethesda, MD, 20814

DISTRICT OF COLUMBIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(DC) (0205)     Form 3009 1/01
                    (rev. 5/02)
Page 1 of 16     Initials
    VMP MORTGAGE FORMS - (800)521-7291



Doc# 2006114233

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors' and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated August 10, 2006
The Note states that Borrower owes Lender Eight Hundred  Thousand  and 0/100ths

Dollars

(U.S. $800,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [_] Condominium Rider | [_] Second Home Rider |
|---|---|---|
| [X] Balloon Rider | [_] Planned Unit Development Rider | [_] 1-4 Family Rider |
| [_] VA Rider | [_] Biweekly Payment Rider | [_] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia: SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Parcel ID Number: 23440810                     which currently has the address of
6629 31ST STREET NW                                            [Street]
Washington, District of Columbia 20015    [Zip Code] ("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VMP ®-6A(DC) (0205)                Page 3 of 15        Initials: _____   Form 3009 1/01 (rev. 5/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

Initials

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

Initials

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(DC) (0205)                           Page 9 of 15                Initials: ___        Form 3009 1/01 (rev. 5/02)

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: [handwritten initials]

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of _____ % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                     WILLIAM H LAWRENCE, III      -Borrower

                                     _____ (Address)

_____      _____ (Seal)
                                     FRANKIE T LAWRENCE           -Borrower

                                     _____ (Address)

_____ (Seal)     _____ (Seal)
                -Borrower                             -Borrower

_____ (Address)  _____ (Address)

_____ (Seal)     _____ (Seal)
                -Borrower                             -Borrower

_____ (Address)  _____ (Address)

_____ (Seal)     _____ (Seal)
                -Borrower                             -Borrower

_____ (Address)  _____ (Address)

**DISTRICT OF COLUMBIA, ss:**

I, Jordan Resnick _____, a Notary Public in and for the District
of Columbia, do hereby certify that

William H. Lawrence III
Frankie T. Lawrence

personally known to me as the person(s) who executed the foregoing instrument bearing date of 10
day of August 2006 _____, personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this      10   day of August 2006

_____ (Seal)
Notary Public, D.C.

```
JORDAN RESNICK
Notary Public
State of Maryland
Montgomery County
My commission exp. October 30, 2007
```

Initials: _____

-6A(DC) (0205)                    Page 15 of 15                    Form 3009 1/01 (rev. 5/02)

# ADJUSTABLE RATE AND BALLOON PAYMENT RIDER

(LIBOR Six-Month Index (As Published in The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE AND BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this 10th day of August, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Fremont Investment & Loan   ("Lender") of the same date and covering the property described in the Security Instrument and located at:

6629 31ST STREET NW, Washington, DC  20015
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY. THE NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THE NOTE AT MATURITY, BORROWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THE NOTE. FURTHER, IF BORROWER REFINANCES, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

Section 2 of the Note provides for an initial interest rate of  8.850 % and states that the interest rate of the Note will change in accordance with Section 4 of the Note. Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider.  Among other things, the Note Rider modifies, amends, and supplements Sections 3 and 4 of the Note to read, in their entirety, as follows:

BALARM1  01/04/06                           Page 1 of 4

"3.   **PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on 10/01/2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On September 01, 2036 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 6,078.67 . This amount may change.

**(C)   Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)   Change Dates**

The interest rate I will pay may change on the first day of September, 2008 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 270/1000 percentage point(s) ( 6.270 %) (the "Margin")to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on 9/1/2046 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BALARM2  01/04/06                    Page 2 of 4

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.850 % or less than 8.850 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 1.500 percentage point(s) ( One and 500/1000 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 14.850 % and will never be less than 8.850 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    EFFECT OF NOTE RIDER**

The Note Rider contains the following provisions:

"This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect."

**C.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.    Until Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument shall be in effect as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

2.    After Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument described in Section C.1. above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall then be modified, amended and supplemented to read, in its entirety, as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. "

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate And Balloon Payment Rider.

_____ (Seal)
WILLIAM H LAWRENCE, III         - Borrower

_____ (Seal)
FRANKIE L LAWRENCE              - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

BALARM4  01/04/06            Page 4 of 4            [Sign Original Only]

## Exhibit A

LOT NUMBERED 59 IN SQUARE NUMBERED 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF AA TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT" AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12.

AND

PART OF ABERFOYLE PLAT W. CLOSED AND SHOWN ON PLAT RECORDED IN LIBER 169, FOLIO 68 OF THE RECORDS OF THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA, DESCRIBED AS FOLLOWS: BEGINNING FOR THE SAME AT A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF 31ST STREET, N.W., SAID POINT BEING ALSO THE NORTHERLY CORNER OF LOT 59, IN SQUARE 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF A TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT", AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12 AND RUNNING THENCE ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 44 DEGREES, 58 MINUTES, 30 SECONDS EAST, 20.01 FEET TO A POINT; THENCE SOUTH 66 DEGREES, 07 MINUTES, 38 SECONDS EAST 37.75 FEET TO A POINT; THENCE SOUTH 28 DEGREES, 40 MINUTES, 44 SECONDS EAST, 26.04 FEET TO A POINT; THENCE SOUTH 44 DEGREES 58 MINUTES, 30 SECONDS WEST 11.90 FEET TO A POINT; THENCE SOUTH 39 DEGREES, 40 MINUTES, 43 SECONDS EAST, 41.24 FEET TO A POINT; THENCE ALONG THE REAR LINE OF SAID LOT 59 EXTENDED. SOUTH, 44 DEGREES, 58 MINUTES, 30 SECONDS WEST 20.01 FEET TO A POINT; SAID POINT BEING ALSO THE EASTERLY POINT OF SAID LOT 59; AND THENCE ALONG THE NORTHEASTERLY LINE OF SAID LOT 59 AND RUNNING WITH AN ARC OF A CURVE TO THE LEFT, THE RADIUS OF WHICH IS 1263.11 FEET, 145.71 FEET TO THE PLACE OF BEGINNING.

NOTE: AT THE DATE HEREOF, THE ABOVE DESCRIBED LAND IS DESIGNATED ON THE RECORDS OF THE ASSESSOR FOR THE DISTRICT OF COLUMBIA FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 810 SQUARE 2344.

Tax Id: 2344 0810

Property Address: 6629 31st Street NW, Washington, District of Columbia 20015

# SECURITY AFFIDAVIT

## CLASS 1 AND CLASS 2

File No. 06-0584JR

We, William H. Lawrence,III., and Frankie T. Lawrence, the owners of the real property described within, certify, subject to criminal penalties for making false statements pursuant to Section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2514), that the real property described within is either Class 1 Property or Class 2 Property, as those classes of property are established pursuant to Section 412a of district of Columbia Real Property Tax Revision Act of 1974, approved September 3, 1974 (88 Stat. 1051 D.C. Code 47-813), with 5 or fewer units.

_____
William H. Lawrence,III.,

_____
Frankie T. Lawrence

Subscribed and sworn to before me this 10th day of August, 2006.

JORDAN RESNICK
Notary Public
State of Maryland
Montgomery County
My commission exp. October 30, 2007

_____
Notary Public

My commission expires: _____

Doc# 2006114233
Filed & Recorded
08/22/2006   8:30AM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
RECORDING          $      153.00
SURCHARGE          ·$        6.50
Total:             $      159.50



**EXHIBIT**

D

LT2-0-0-2



LT1-5-2008088973-1

After Recording Return to:
**MGC Mortgage Inc**
Document Control, Allison Martin
7195 Dallas Parkway
Plano, Texas 75024
Bc : 69116

## CORPORATION ASSIGNMENT of DEED OF TRUST

MIN: 100194430002963703   MERS Phone: 1-888-679-6377
RFC Loan Number: 10930990
Seller Loan Number: 3000296370



FOR VALUE RECEIVED, '(MERS) Mortgage Electronic Registration Systems, Inc.'

the undersigned hereby grants, assigns and transfers to

LNV Corporation
7195 Dallas Parkway
Plano, Texas 75024

all beneficial interest under that certain Deed of Trust dated 8/10/2006

executed by WILLIAM H LAWRENCE_IIIFRANKIE T LAWRENCE

and recorded in Book N/A____ on Page N/A___ as Instrument No. 2006114233 on 8/22/06___
of official Records in the County Recorder's Office of The District of Columbia.

Legal · See attached Exhibit "A"
MORTGAGE AMOUNT: $800,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'(MERS) Mortgage Electronic Registration Systems, Inc.'

BY:

NAME: Michael Mead

STATE OF          Minnesota )

COUNTY OF         Hennepin )      TITLE: Assistant Vice President

On 3/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Michael
Mead, Assistant Vice President of '(MERS) Mortgage Electronic Registration Systems, Inc.' personally known
to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he
executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon
behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Diane m mustard

Notary Public in and for said State

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.

K 2

BC: 619116

## Exhibit "A"

Legal Description:

LOT NUMBERED 59 IN SQUARE NUMBERED 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF AA TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT" AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12.

AND

PART OF ABERFOYLE PLAT W. CLOSED AND SHOWN ON PLAT RECORDED IN LIBER 169, FOLIO 68 OF THE RECORDS OF THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA, DESCRIBED AS FOLLOWS: BEGINNING FOR THE SAME AT A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF 31ST STREET, N.W., SAID POINT BEING ALSO THE NORTHERLY CORNER OF LOT 59, IN SQUARE 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF A TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT", AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12 AND RUNNING THENCE ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 44 DEGREES, 58 MINUTES, 30 SECONDS EAST, 20.01 FEET TO A POINT; THENCE SOUTH 66 DEGREES, 07 MINUTES, 38 SECONDS EAST 37.75 FEET TO A POINT; THENCE SOUTH 28 DEGREES, 40 MINUTES, 44 SECONDS EAST, 28.04 FEET TO A POINT; THENCE SOUTH 44 DEGREES 58 MINUTES, 30 SECONDS WEST 11.90 FEET TO A POINT; THENCE SOUTH 39 DEGREES, 40 MINUTES, 43 SECONDS EAST, 41.24 FEET TO A POINT; THENCE ALONG THE REAR LINE OF SAID LOT 59 EXTENDED. SOUTH, 44 DEGREES, 58 MINUTES, 30 SECONDS WEST 20.01 FEET TO A POINT; SAID POINT BEING ALSO THE EASTERLY POINT OF SAID LOT 59; AND THENCE ALONG THE NORTHEASTERLY LINE OF SAID LOT 59 AND RUNNING WITH AN ARC OF A CURVE TO THE LEFT, THE RADIUS OF WHICH IS 1263.11 FEET, 145.71 FEET TO THE PLACE OF BEGINNING.

NOTE: AT THE DATE HEREOF, THE ABOVE DESCRIBED LAND IS DESIGNATED ON THE RECORDS OF THE ASSESSOR FOR THE DISTRICT OF COLUMBIA FOR ASSESSMENT AND TAXATION PURPOSES AS LOT 810 SQUARE 2344.

Tax Id: 2344 0810

Property Address: 6629 31st Street NW, Washington, District of Columbia 20015

| RECORDING SURCHARGE | $ | 20.00 |
| | $ | 6.50 |

Doc# 2008068973 Fees:$26.50
06/19/2008   1:22PM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888



April 05, 2012

Frankie Lawrence                    MS1720
6629 31st St NW
Washington DC 20015-2345


RE: Loan Number: ▓▓▓▓▓▓1963
    Property:   6629 31st St Nw
                Washington DC 20015

Dear Mortgagor(s):

You are in default under the terms of the Note, evidencing the
above-referenced loan, and the Mortgage, Security Deed or Deed of Trust
("Mortgage") securing the note and encumbering real property located at
6629 31st St Nw,,Washington DC 20015.

Under the terms of the Note and/or Mortgage, you are hereby notified
of the following:

1. You are presently in default with regard to the payment due on
   February 01, 2012, and with regard to payments which have subsequently
   become due.

2. To cure this default, you must pay the amount of $ 35,664.69
   in the form of cashier or certified funds, made payable to
   Dovenmuehle Mortgage, Inc., and send it to 1 Corporate Drive,
   Suite 360, Lake Zurich, IL 60047.  If this payment is received
   after another late charge is due, you must include an additional
   late charge of $ 354.63.  If the payment is received after another
   payment is due, you must include your next month's payment of
   $ 8028.06, as well.

3. This default must be cured on or before May 05, 2012.  Therefore,
   you have a 30 day grace period to cure this default.

4. Failure to cure such default on or before the date referred to
   in Paragraph 3 shall result in acceleration of the maturity of
   the Note or other obligation secured by the Mortgage and the
   foreclosure sale of the real property.  The maturity of the
   Note or other obligation will be accelerated automatically if
   the default is not cured by the date specified above.


                                        QL051/KZE



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

Page 2 of 2
April 05, 2012
Loan Number: ███████1963

5. The addressee of this notice retains the right to reinstate the
   maturity of the Note or other obligation after its acceleration and
   to bring a court action to assert the non-existence of a default or
   any other defense of the addressee, including the failure to send
   proper notices, to the acceleration and foreclosure sale.

Sincerely,

Collection Department

CALL TOLL FREE:     1-877-471-7889

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY OR
HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL
PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR
AS AN ACT TO COLLECT, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM
YOU PERSONALLY.

QL051/KZE



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

April 05, 2012


William Lawrence                    MS1720
6629 31st St NW
Washington DC 20015-2345



Re: Loan Number: ████████963

Dear Mortgagor(s):

You are in default under the terms of the Note evidencing the above
referenced loan, and the Mortgage, Security Deed or Deed of Trust
("Mortgage") securing the Note and encumbering real property
located at 6629 31st St Nw,,Washington DC 20015.

Under the terms of the Note and/or Mortgage you are hereby notified
of the following:

1. You are presently in default with regard to the payment due on
   February 01, 2012, and with regard to payments which have subsequently
   become due;

2. In order to cure this default, you must pay the amount of $ 35,664.69
   in the form of cashier or certified funds, made payable to
   MGC Mortgage, Inc, and send to:
   1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.  If this
   payment is received after another late charge is due, you must
   include an additional late charge of $ 354.63. If payment is
   received after another payment is due, you must include your next
   month's payment of $ 8028.06 as well.

3. This default must be cured on or before May 05, 2012.  You
   therefore have a 30 day grace period in order to cure this default.

4. Failure to cure this default on or before the date referred to
   in Paragraph 3 shall result in acceleration of the maturity of
   the Note or other obligation secured by the Mortgage and the
   foreclosure sale of the related real property.  The maturity of the
   Note or other obligation will be accelerated automatically if
   the default is not cured by the date specified in Paragraph 3 above.



                                        QL050/KZE



Mortgage Servicing
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945
www.mgcmortgage.com
Customer Service 1-877-471-7888

Page 2 of 2
April 05, 2012
Loan Number: ████████1963

5. The addressee of this notice retains the right to reinstate the
   maturity of the Note or other obligation after its acceleration,
   and the addressee has the right to bring a court action
   to assert the non-existence of a default or any other defense of
   the addressee, including the failure to send proper notices of
   the acceleration and foreclosure sale.

Sincerely,

Collection Department


Toll Free:     1-877-471-7889

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY OR
HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL
PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR
AS AN ACT TO COLLECT, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM
YOU PERSONALLY.

By Certified and Regular Mail


QL050/KZE

  

LT1~5-2014002669~1

LT2-0-0-3

PREPARED BY & RETURN TO:
Rosenberg & Associates, LLC
7910 Woodmont Avenue, Suite 750
Bethesda, MD 20814

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES, made this 4 day of _December_ , 2013, by LNV Corporation, party of the first part; and Diane S. Rosenberg, Azer Akhtar, and Kenneth R. Savitz, parties of the second part, Grantees, hereinafter referred to as "Substitute Trustees."

WHEREAS, on August 10, 2006, Frankie T. Lawrence and William H. Lawrence, III executed a Deed of Trust, recorded in the Land Records of the District of Columbia as Instrument No. 2006114233, that granted and conveyed the property known as:

LOT NUMBERED 59 IN SQUARE NUMBERED 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF AA TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT" AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12.

AND

PART OF ABERFOYLE PLAT W. CLOSED AND SHOWN ON PLAT RECORDED IN LIBER 169, FOLIO 68 OF THE RECORDS OF THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA, DESCRIBED AS FOLLOWS, BEGINNING FOR THE SAME AT A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF 31st STREET, N.W., SAID POINT BEING ALSO THE NORTHERLY CORNER OF LOT 59, IN SQUARE 2344 IN THE SUBDIVISION MADE BY GERTRUDE VAN HOESON OF PART OF A TRACT OF LAND KNOWN AS "THE MATTHEWS TRACT", AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 72 AT FOLIO 12 AND RUNNING THENCE ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 44 DEGREES, 58 MINUTES, 30 SECONDS EAST, 20.01 FEET TO A POINT; THENCE SOUTH 66 DEGREES, 07 MINUTES, 38 SECONDS EAST 37.75 FEET TO A POINT; THENCE SOUTH 28 DEGREES, 40 MINUTES, 44 SECONDS EAST, 26.04 FEET TO A POINT;

THENCE SOUTH 44 DEGREES 58 MINUTES, 30 SECONDS
WEST 11.90 FEET TO A POINT; THENCE SOUTH 39
DEGREES, 40 MINUTES, 43 SECONDS EAST, 41.24 FEET
TO A POINT; THENCE ALONG THE REAR LINE OF SAID
LOT 59 EXTENDED. SOUTH, 44 DEGREES, 58 MINUTES,
30 SECONDS WEST 20.01 FEET TO A POINT; SAID POINT
BEING ALSO THE EASTERLY POINT OF SAID LOT 59;
AND THENCE ALONG THE NORTHEASTERLY LINE OF
SAID LOT 59 AND RUNNING WITH AN ARC OF A
CURVE TO THE LEFT, THE RADIUS OF WHICH IS
1263.11 FEET, 145.71 FEET TO THE PLACE OF
BEGINNING.

NOTE: AT THE DATE HEREOF, THE ABOVE
DESCRIBED LAND IS DESIGNATED ON THE RECORDS
OF THE ASSESSOR FOR THE DISTRICT DF COLUMBIA
FOR ASSESSMENT AND TAXATION PURPOSES AS LOT
810 SQUARE 2344.

Tax ID: 2344 0810

Address:     6629 31st Street, NW
             Washington, DC 20015

in trust unto First American Title Insurance Company, Trustee, to secure payment of a
Deed of Trust in the original principal amount of $800,000.00 unto the original beneficiary
therein, Mortgage Electronic Registration Systems, Inc. ("MERS") as for nominee for Fremont
Investment & Loan; and

WHEREAS, on March 10, 2008, MERS assigned its interest in the subject Deed of Trust
to LNV Corporation pursuant to that Corporation Assignment of Deed of Trust recorded
amongst the Land Records of the District of Columbia as Instrument No. 2008088973; and

WHEREAS said Deed of Trust provides that the holder of the Note shall have the power
and authority to appoint substitute trustee(s) in the place and stead of the trustee(s) originally
named therein; and

WHEREAS, the party of the first part is the holder of the Note secured by said Deed of
Trust; and,

WHEREFORE, in exchange for certain good and valuable consideration, the party of the
first part by execution and delivery of this instrument, does hereby remove the original
Trustee(s) designated in the aforesaid Deed of Trust and any successor(s) appointed prior to this
date as Substitute Trustee(s), and in lieu thereof does hereby constitute and appoint Diane S.
Rosenberg, Azer Akhtar, and Kenneth R. Savitz as Substitute Trustees each of whom may act

individually or collectively under the terms of the aforesaid Deed of Trust with all the rights, powers and duties conferred therein on the original Trustee(s).

ATTEST                                    LNV CORPORATION

_Michael Nennig_                          _Paula Borshell_

By: _michael Nennig_                      By: _____

                                          Title: ___Authorized Signer___

STATE OF _Illinois_                :
COUNTY/CITY OF _Lake_              : ss.

I, ___Ana Smith___, a Notary Public in and for the State and county aforesaid, do hereby certify that ___Paula Borshell___, ___Authorized Signer___ _____, who affirmed before me that she/he has proper authority to execute the foregoing Deed of Appointment of Substitute Trustees bearing date of _December 4th_, 2013 and hereto annexed, personally appeared before me in the jurisdiction aforesaid, and, being duly sworn and personally well known to me or reasonably proven to be the persons who executed the said Deed of Appointment of Substitute Trustees, acknowledged the same to be her/his willful act and deed and that of the said party of the first part, and that she/he has the lawful authority so to act on behalf of the corporation.

Given under my hand and seal this _4th_ day of _December_, 2013.

_Ana Smith_

Notary Public

> OFFICIAL SEAL
> ANA SMITH
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:09/28/16

My Commission Expires: _9/28/2016_

Doc# 2014002669 Fees:$31.50
01/10/2014   11:32AM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS IDA WILLIAMS

3                    RECORDING          $    25.00
                     SURCHARGE          $     6.50

# NOTICE



EXHIBIT

6

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service
## Notice of Federal Tax Lien

8397

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #3
Lien Unit Phone: (800)  913-6050

Serial Number

356814307

For Optional Use by Recording Office

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer  WILLIAM H III LAWRENCE

Residence       6629 31ST ST NW
                WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6672 | 03/31/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2613.30 |
| 6672 | 06/30/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2659.50 |
| 6672 | 09/30/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2084.27 |
| 6672 | 12/31/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2509.96 |
| 6672 | 06/30/2003 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 1237.36 |
| 6672 | 03/31/2004 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2541.78 |
| 6672 | 09/30/2004 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 6071.95 |

RECORDING SURCHARGE                                    $           20.00
                                                                   8.50

Doc# 2007059963 Fees:$28.50
05/03/2007  9:52AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

Place of Filing,    OFFICE OF RECORDER OF DEEDS FOR
                    WASHINGTON D.C.
                    WASHINGTON, DC 20001

Total $     19718.12

This notice was prepared and signed at _____ JACKSONVILLE, FL _____ , on this,

the __06th__ day of __April__ __2007__.

Signature  R. A. Mitchell

for DOUGLAS MOORE

Title  REVENUE OFFICER
(202) 874-0674

23-03-2660

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1.- Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO. 60025X

# NOTICE

4606

| Form 668 (Y)(c)<br>(Rev. February 2004) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|
| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>556755909 | For Optional Use by Recording Office |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer WILLIAM H III LAWRENCE

Residence    6629 31ST ST NW
             WASHINGTON, DC 20015-2345

Doc#2009068760 Fees:$26.50
06/25/2009   3:45PM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672 | 09/30/2003 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 3583.69 |
| 6672 | 12/31/2003 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 3972.51 |
| 6672 | 06/30/2004 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 4546.25 |
| 6672 | 12/31/2004 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 6715.61 |
| 6672 | 03/31/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 5631.89 |
| 6672 | 06/30/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 8946.25 |
| 6672 | 09/30/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 10740.86 |
| 6672 | 12/31/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 7018.24 |
| 6672 | 06/30/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2620.24 |
| 6672 | 09/30/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2913.86 |
| 6672 | 12/31/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2513.29 |
| 6672 | 03/31/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2894.91 |
| 6672 | 06/30/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 1937.70 |
| 6672 | 09/30/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2852.53 |
| 6672 | 12/31/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2479.61 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total | $ | 69367.44 |
|---|---|---|---|---|

This notice was prepared and signed at    BALTIMORE, MD    , on this,

the ___15th___ day of ___June___ , 2009 .

| | RECORDING<br>SURCHARGE | $<br>$ | 20.00<br>6.50 |
|---|---|---|---|

| Signature<br>*R. A. Mitchell*<br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

# NOTICE

| | | |
|---|---|---|
| **Form 668 (Y)(c)**<br>(Rev. February 2004) | 4606<br>Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>556756009 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer WILLIAM H III LAWRENCE

Residence      6629 31ST ST NW
             WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672 | 09/30/2008 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 50.15 |

LT1-5-2009068761-1

LT2-0-0-1

Doc# 2009068761 Fees:$26.50
00/25/2009  3:45PM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING     $    20.00
SURCHARGE     $     6.50

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total | $    50.15 |
|---|---|---|---|

This notice was prepared and signed at    BALTIMORE, MD          , on this,

the   15th   day of   June     2009

| Signature   *R. A. Mitchell*<br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER      23-03-2660<br>(202) 874-0674 |
|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# NOTICE

| Form 668 (Y)(c) (Rev. February 2004) | 10182 | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** |
|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Serial Number 828402511 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Doc#:2011123675 Fees:$26.50
12/13/2011 10:08AM Pages:1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

LT1-5-201123675-1
LT2-0-0-1

| Name of Taxpayer | HAPPINESS III INC AS ALTER-EGO OF WILLIAM H LAWRENCE III Alter Ego of |
|---|---|
| Residence | 6629 31ST ST NW WASHINGTON, DC 20015 |

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2003 | XXX-XX-5466 | 02/13/2006 | 03/14/2016 | 22267.95 |
| 1040 | 12/31/2005 | XXX-XX-5466 | 07/09/2007 | 08/08/2017 | 30919.08 |
| 1040 | 12/31/2006 | XXX-XX-5466 | 06/02/2008 | 07/02/2018 | 29448.46 |
| 1040 | 12/31/2008 | XXX-XX-5466 | 06/01/2009 | 07/01/2019 | 23336.00 |
| 1040 | 12/31/2009 | XXX-XX-5466 | 08/30/2010 | 09/29/2020 | 18473.30 |
| 5329 | 12/31/2005 | XXX-XX-5466 | 07/16/2007 | 08/15/2017 | 339.55 |
| 6672 | 03/31/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2613.30 |
| 6672 | 06/30/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2659.50 |
| 6672 | 09/30/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2084.27 |
| 6672 | 12/31/2002 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2509.96 |
| 6672 | 06/30/2003 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 982.50 |
| 6672 | 09/30/2003 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 3742.69 |
| 6672 | 12/31/2003 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 3972.51 |
| 6672 | 03/31/2004 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 2541.78 |
| 6672 | 06/30/2004 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 4546.25 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR WASHINGTON D.C. WASHINGTON, DC 20001 | Total | $ | 150437.10 |
|---|---|---|---|---|

This notice was prepared and signed at **BALTIMORE, MD** , on this,

the **10th** day of **November**, **2011**

| RECORDING SURCHARGE | $ $ | 20.00 6.50 |
|---|---|---|

| Signature for DOUGLAS P MOORE | Title REVENUE OFFICER (202) 874-0674 | 23-03-2660 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part ( - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

# NOTICE

10182

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>828403111 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer  HAPPINESS III INC AS ALTER-EGO OF
WILLIAM H LAWRENCE III
Alter Ego of

Residence  6629 31ST ST NW
WASHINGTON, DC 20015

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672 | 09/30/2004 | XXX-XX-5466 | 05/04/2006 | 06/03/2016 | 6071.95 |
| 6672 | 12/31/2004 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 6715.61 |
| 6672 | 03/31/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 5631.89 |
| 6672 | 06/30/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 8946.25 |
| 6672 | 09/30/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 10740.86 |
| 6672 | 12/31/2005 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 7018.24 |
| 6672 | 06/30/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2620.24 |
| 6672 | 09/30/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2913.86 |
| 6672 | 12/31/2006 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2513.29 |
| 6672 | 03/31/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2894.91 |
| 6672 | 06/30/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 1937.70 |
| 6672 | 09/30/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2852.53 |
| 6672 | 12/31/2007 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 2479.61 |
| 6672 | 09/30/2008 | XXX-XX-5466 | 04/06/2009 | 05/06/2019 | 50.15 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total $ | 63387.09 |
|---|---|---|---|

This notice was prepared and signed at   BALTIMORE, MD   , on this,

the ___10th___ day of ___November___, ___2011___.

RECORDING SURCHARGE   $   20.00
$   8.50

| Signature<br><br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# NOTICE

3595

| Form 668 (Y)(c)<br>(Rev. February 2004) | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|
| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>933907813 | For Optional Use by Recording Office |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer  WILLIAM H III LAWRENCE

Residence    6629 31ST ST NW
             WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 6672 | 03/31/2012 | XXX-XX-5466 | 11/27/2012 | 12/27/2022 | 1031.83 |
| 6672 | 06/30/2012 | XXX-XX-5466 | 11/27/2012 | 12/27/2022 | 361.54 |

LT1-5-2013048343-1

LT2-0-0-1

Doc# 2013048343 Fees:$31.50
04/24/2013   4:38PM Pages 1
Filed & Recorded in Official Records of
WASH DC.RECORDER OF DEEDS IDA WILLIAMS

| | |
|---|---|
| RECORDING<br>SURCHARGE | $    25.00<br>$     6.50 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total $ | 1393.37 |
|---|---|---|---|

This notice was prepared and signed at _____ BALTIMORE, MD _____ , on this

the ___16th___ day of ___April___ , ___2013___

| Signature<br><br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-05-3207 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

NOTICE
8397

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Serial Number 356814207 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

LT1-5-2007059749-1

LT2-0-0-1

Name of Taxpayer WILLIAM H III & FRANKIE T LAWRENCE

Doc#: 2007059749 Fees:$26.50
05/03/2007  7:20AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

Residence    6629 31ST ST NW
WASHINGTON, DC 20015-2345

| IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a). | RECORDING SURCHARGE | $ 20.00 $ 6.50 |
|---|---|---|

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2003 | XXX-XX-5466 | 08/23/2004 | 09/22/2014 | 18522.16 |
| 1040 | 12/31/2003 | XXX-XX-5466 | 02/13/2006 | 03/14/2016 | |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR WASHINGTON D.C. WASHINGTON, DC 20001 | Total | $ | 18522.16 |
|---|---|---|---|---|

This notice was prepared and signed at      JACKSONVILLE, FL      , on this,

the  06th  day of  April    2007 .

| Signature  R. A. Mitchell for DOUGLAS MOORE | Title REVENUE OFFICER (202) 874-0674 | 23-03-2660 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

NOTICE
5219

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

**Form 668 (Y)(c)**
(Rev. February 2004)

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>43247070E | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

LT1-5-2008040720-1

LT2-0-0-1

Doc# 2008040720 Fees:$20.50
04/17/2008   9:32AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

Name of Taxpayer  WILLIAM H III & FRANKIE T LAWRENCE

| RECORDING | $ | 20.00 |
|---|---|---|
| SURCHARGE | $ | 5.50 |

Residence    6629 31ST ST NW
             WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2005 | XXX-XX-5466 | 07/09/2007 | 08/08/2017 | 27475.28 |

| Place of Filing | | |
|---|---|---|
| OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total  $ | 27475.28 |

This notice was prepared and signed at _____ BALTIMORE, MD _____ , on this,

the ___25th___ day of ___March___, ___2008___.

| Signature   *R. A. Mitchell*<br>for DOUGLAS MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# NOTICE

| Form 668 (Y)(c)<br>(Rev. February 2004) | 3753 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>506104209 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue
Code, we are giving a notice that taxes (including interest and penalties)
have been assessed against the following-named taxpayer. We have made
a demand for payment of this liability, but it remains unpaid. Therefore,
there is a lien in favor of the United States on all property and rights to
property belonging to this taxpayer for the amount of these taxes, and
additional penalties, interest, and costs that may accrue.

Name of Taxpayer  WILLIAM H III & FRANKIE T LAWRENCE

Residence        6629 31ST ST NW
                 WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below,
unless notice of the lien is refiled by the date given in column (e), this notice shall,
on the day following such date, operate as a certificate of release as defined
in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-5466 | 06/02/2008 | 07/02/2018 | 26131.95 |

LT1-5-2009007354-1

LT2-0-0-1

Doc#: 2009007354  Fees:$0.00
01/27/2009   8:17AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

| Place of Filing. | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C,<br>WASHINGTON, DC 20001 | Total $ | 26131.95 |
|---|---|---|---|

This notice was prepared and signed at    BALTIMORE, MD                              , on this,

the  07th  day of  January   2009  .

| Signature   _R. A. Mitchell_<br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# NOTICE

| Form 668 (Y)(c) (Rev. February 2004) | | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** | | |
|---|---|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050. | Serial Number 497084706 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer WILLIAM H III & FRANKIE T LAWRENCE

Residence    6629 31ST ST NW
             WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 5329 | 12/31/2005 | XXX-XX-5466 | 07/16/2007 | 08/15/2017 | 282.95 |

LT1-5-2008017585-1

LT2-0-0-1

Doc# 2008017585 Fee:$25.50
02/23/2009   8:52AM Pages: 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING
SURCHARGE        28.80
                  6.50

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR WASHINGTON D.C. WASHINGTON, DC 20001 | Total $ | 282.95 |
|---|---|---|---|

This notice was prepared and signed at   BALTIMORE, MD   , on this,

the   25th   day of   November   2008

| Signature R. A. Mitchell for DOUGLAS P MOORE | Title REVENUE OFFICER (202) 874-0674 | 23-03-2660 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409).

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# NOTICE

3758

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

**Form 668 (Y)(c)**
(Rev. February 2004)

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>734813310 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

LT1-5-2011009266-1

Name of Taxpayer  WILLIAM H III & FRANKIE T LAWRENCE

Residence       6629 31ST ST NW
                WASHINGTON, DC 20015-2345

LT2-0-0-1

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2009 | XXX-XX-5466 | 08/30/2010 | 09/29/2020 | 18420.30 |

Doc# 2011009266 Fees:$26.50
01/21/2011  2:01PM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING        $        20.00
SURCHARGE        $         6.50

| Place of Filing | | |
|---|---|---|
| OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total $ | 18420.30 |

This notice was prepared and signed at _____ BALTIMORE, MD _____, on this,

the __21st__ day of __December__ __2010__.

| Signature<br><br>for DOUGLAS P MOORE | Title REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien.
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO. 60025X

# NOTICE

| | 11290 | Department of the Treasury - Internal Revenue Service | |
|---|---|---|---|
| **Form 668 (Y)(c)** (Rev. February 2004) | | **Notice of Federal Tax Lien** | **For Optional Use by Recording Office** |
| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Serial Number 880157212 | | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer  WILLIAM H III & FRANKIE T LAWRENCE

Residence  6629 31ST ST NW
WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | XXX-XX-5456 | 05/28/2012 | 06/27/2022 | 65861.30 |
| | | | | | |
| LT1-5-2012095146-1 | | | Doc# 2012095146 Fees:$31.50 09/06/2012  9:45AM Pages:1 Filed & Recorded in Official Records of WASH DC RECORDER OF DEEDS IDA WILLIAMS | | |
| LT2-0-0-1 | | | RECORDING SURCHARGE | | $    25.00 $     6.50 |

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR WASHINGTON D.C. WASHINGTON, DC 20001 | Total | $ | 65861.30 |
|---|---|---|---|---|

This notice was prepared and signed at  BALTIMORE, MD , on this,

the  24th  day of  August , 2012 .

| Signature for DOUGLAS P. MOORE | Title REVENUE OFFICER (202) 874-0674 | 23-05-3207 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO. 60025X



# NOTICE

|  | 10182 | Department of the Treasury - Internal Revenue Service |
|---|---|---|
| **Form 668 (Y)(c)**<br>(Rev. February 2004) |  | **Notice of Federal Tax Lien** |

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>874236612 | For Optional Use by Recording Office |
|---|---|---|

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer  WILLIAM H III & FRANKIE T LAWRENCE

Residence       6629 31ST ST NW
               WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2010 | XXX-XX-5466 | 04/02/2012 | 05/02/2022 | 7213.28 |

LT1-5-2012066076-1

Doc# 2012066076 Fees:$31.50
06/19/2012   4:25PM Pages 1
Filed & Recorded in Official Records o
WASH DC RECORDER OF DEEDS IOR WILLIAMS

LT2-0-0-1

RECORDING
SURCHARGE          $    25.00
                   $     6.50

| Place of Filing | | |
|---|---|---|
| OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total $ | 7213.28 |

This notice was prepared and signed at     BALTIMORE, MD                     , on this,

the   12th   day of   June   ,   2012  .

| Signature   ~~~~~<br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-05-3207 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60026X

# NOTICE

| | 4606 | Department of the Treasury - Internal Revenue Service |
|---|---|---|

**Form 668 (Y)(c)**
(Rev. February 2004)

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>556755809 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer WILLIAM H III & FRANKIE T LAWRENCE

Residence   6629 31ST ST NW
WASHINGTON, DC 20015-2345

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2008 | XXX-XX-5466 | 06/01/2009 | 07/01/2019 | 18873.92 |

LT1-5-2009068759-1

LT2-0-0-1

Doc# 2009068759 Fees:$26.50
06/25/2009   3:45PM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING
SURCHARGE
$   20.00
$    6.50

| Place of Filing | OFFICE OF RECORDER OF DEEDS FOR<br>WASHINGTON D.C.<br>WASHINGTON, DC 20001 | Total $ | 18873.92 |
|---|---|---|---|

This notice was prepared and signed at _____BALTIMORE, MD_____ , on this,

the __15th__ day of __June__ , __2009__.

| Signature  *R. A. Mitchell*<br>for DOUGLAS P MOORE | Title<br>REVENUE OFFICER<br>(202) 874-0674 | 23-03-2660 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X